UNITED STATES OF AMERICA, )
)
Plaintiff, )
)
v. ) 3:26-CR-3-KAC-DCP-2
)
SEAN EVANS, JR.; )
)
Defendant. )

**MEMORANDUM OPINION AND ORDER**
**ADOPTING REPORT AND RECOMMENDATION**

This criminal case is before the Court for consideration of the Report and Recommendation ("Report") issued by United States Magistrate Judge Debra C. Poplin, [Doc. 116] recommending that the Court grant the United States's "Emergency Motion Under 18 U.S.C. § 3145 For Revocation of Magistrate Judge's Release Order" as to Defendant Sean Evans, Jr. (2) [Doc. 47]. Defendant Sean Evans, Jr. raised several legal objections to the Report's ultimate recommendation but no factual objections [*See* Doc. 149]. As set forth below, the Court **ACCEPTS** and **ADOPTS** the Report [Doc. 116], **OVERRULES** Defendant's Objections [Doc. 149], and **GRANTS** the Emergency Motion to Revoke Detention Order [Doc. 47].

I. **Background**[1]

On January 7, 2026, an East Tennessee jury indicted Defendant and sixteen (16) other co-conspirators for conspiring to distribute and possess with intent to distribute fifty (50) grams or more of actual methamphetamine and 400 grams or more of a mixture and substance containing a detectable amount of fentanyl, from about January 2024 to about January 7, 2026, in violation of

---

[1] No Party raises any objection to the Report's description of the facts and prior proceedings. The Court adopts that description but does not repeat it in full here.

21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A) [Doc. 8]. The grand jury also charged Defendant with four (4) additional unique counts involving possession or distribution of fentanyl, methamphetamine, or heroin [*See id.*].

Defendant was arrested on those charges in the Eastern District of Michigan [*See* Doc. 74 at 1]. After his arrest, on January 16, United States Magistrate Judge Elizabeth Stafford held a detention hearing [*Id.* at 7-13]. At the detention hearing, Defendant presented the testimony of his father, who lives in Michigan and agreed to allow Defendant to live with him [*See* Doc. 116 at 12, 22]. Judge Stafford ordered Defendant released on conditions, [*see* Doc. 74 at 8-13], and denied the United States's motion to stay the release order pending appeal to the undersigned, [*see* Doc. 46 at 1-2]. The United States filed an "Emergency Motion Under 18 U.S.C. § 3145 For Revocation Of Magistrate Judge's Release Order" [Doc. 47].

That same day, January 16, the undersigned issued an "Order Staying Release" [*See* Doc. 50]. The undersigned (1) "stayed" Judge Stafford's release order; (2) referred the Emergency Motion to Revoke Detention Order to Judge Poplin for a report and recommendation; and (3) ordered "the United States Marshals Service to transport Defendant to this District on an expedited basis" [Doc. 50 at 2-3]. Around the same time, Defendant was released from custody in the Eastern District of Michigan [*See* Doc. 52 at 1]. So, that evening, the undersigned issued a warrant for Defendant's "arrest and detention" [Doc. 52 at 1]. Defendant was "re-arrested the next day" at his father's home, consistent with Judge Stafford's release order [*See* Doc. 149 at 7]. On January 28, Defendant arrived in this District [*See* Doc. 83].

Judge Poplin promptly held a hearing on the Emergency Motion to Revoke Detention Order [*See* Doc. 108]. "Defense counsel presented . . . the audio transcript from Defendant's

detention hearing in Michigan and eight [8] letters from Defendant's family and friends" to support Defendant's release [*See* Doc. 116 at 18].

After the hearing, Judge Poplin issued the Report [Doc. 116]. The Report first "finds that a presumption in favor of detention applies in this case under 18 U.S.C. § 3142(e)(3)(A)" [*Id.* at 26]. And it "finds" that Defendant "minimally rebutted the presumption" [*Id.* at 32]. But the Report concludes that even "assuming Defendant has rebutted the presumption . . . Defendant poses a danger to others and . . . there is no condition or combination of conditions that will reasonably assure the Court of the safety of the community and the Defendant's appearance as required" [*Id.* at 1]. The Report recommends that the undersigned "grant" the Emergency Motion to Revoke Detention Order, "revoke" the release order, and "order that Defendant remained detained" [*Id.* at 33].

Defendant, through his then-counsel,[2] filed legal objections to the Report [*See* Doc. 149]. He ultimately argued that "there are conditions of release that will reasonably assure Mr. Evans's appearance in Court and the safety of the community" [*See* Doc. 149. at 11]. The United States responded in opposition [*See* Doc. 160].

## II.     Analysis

"If a person is ordered released by a magistrate judge," the United States "may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or

---

[2] At some point while the Emergency Motion to Revoke Detention Order was ripening, Defendant's relationship with then-counsel deteriorated [*See* Doc. 151]. At Defendant's request, the Court appointed new counsel [*See* Doc. 161]. Recognizing that the relationship with initial counsel deteriorated during a time relevant to briefing of the Emergency Motion to Revoke Detention Order, the Court ordered newly-appointed counsel to "review the relevant briefings and file any appropriate motions or supplements by March 31" [Doc. 165]. Upon review, newly-appointed counsel filed no motion or supplement.

3

amendment of the conditions of release." *See* 18 U.S.C. § 3145(a)(1).  18 U.S.C. § 3142 generally governs the release or detention of a defendant pending trial.  Where, as here, the United States moves for detention of a defendant charged with "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act," 18 U.S.C. § 3142(f)(1)(C), or "an offense for which the maximum sentence is life imprisonment," *id.* at § 3142(f)(1)(B), the Court must determine whether any "condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," *id.* at § 3142(e)(1), (f).  The Court considers:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.

18 U.S.C. § 3142(g); *see also United States v. Hoilman*, No. 22-6108, 2023 WL 4074630, *1 (6th Cir. Apr. 24, 2023) (citations omitted).

The law presumes, "subject to rebuttal by the person," that "no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of the community" if the Court finds that "there is probable cause to believe that the person committed" an "offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act."  18 U.S.C. § 3142(e)(3)(A).  The grand jury's indictment "by itself, establishes probable cause to believe that a defendant committed the crime

with which he is charged." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) (citing *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985)). The presumption applies here because Defendant was indicted for at least one qualifying offense. The Parties do not dispute that the presumption applies [*See* Docs. 47 at 2; 148 at 5].

To rebut the presumption, Defendant must "introduce at least some evidence" that he is not a flight risk and does not pose a danger to the community. *See Stone*, 608 F.3d at 945, 947 (noting that the defendant's burden is "relatively light"). On this point, Defendant's father testified that Defendant could live with him in Michigan [*See* Doc. 116 at 9]. Defendant offered evidence that although he is from Michigan, he has ties to Knoxville—two of his children reside here [*Id.* at 23]. He presented letters of support from family and friends attesting to his good character [*See id.* at 12, 18]. And upon Defendant's second arrest, he was located at his father's home where he was supposed to be [*See id.* at 22]. So, Defendant satisfied his relatively light burden at this stage. But "the presumption favoring detention does not disappear entirely"—it "remains a factor to be considered among those weighed by the district court." *See Stone*, 608 F.3d at 945 (quoting *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2010) (per curiam)). This is because that "presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial." *United States v. Freeman*, No. 25-5658, 2026 U.S. App. LEXIS 9788, at *4 (6th Cir. April 3, 2026) (quoting *Stone*, 608 F.3d at 645).

Ultimately, the United States "must prove risk of flight by a preponderance of the evidence, and it must prove dangerousness to any other person or the community by clear and convincing evidence." *United States v. Hinton*, 113 F. App'x 76, 77 (6th Cir. 2004); *see* 18 U.S.C. § 3142(f) (addressing the United States's burden as to "the safety of any other person and the community"). Here, the Report properly concluded that the United States has met its burden.

5

Starting with the nature and circumstances of the charged offenses, the Indictment alleges, among other drug-related charges, that Defendant and others conspired to distribute fifty (50) grams or more of methamphetamine and 400 grams or more of a mixture containing fentanyl over the course of two years [*See* Doc. 8].  That "by itself, establishes probable cause" to believe that Defendant trafficked large quantities of methamphetamine and fentanyl over a sustained period. *See Stone*, 608 F.3d at 945 (citing *Hazime*, 762 F.2d at 37).  Drug trafficking is a serious crime that inherently poses a danger to the community.  *See id.*  Fentanyl, even in small amounts, can be deadly.  And the significant ten-year mandatory minimum sentence and maximum life sentence for this offense provide an incentive to flee.  *See United States v. Brown,* 601 F. Supp. 3d 196, 204 (E.D. Ky. 2022).  Defendant argues that he is "not per se ineligible for bond" based solely on the charges [Doc. 149 at 8].  True.  But this factor weighs against him.

The "weight of the evidence" leans the same way.  *See*  18 U.S.C. § 3142(g)(2).  This factor only "deals with the factors to be considered in determining whether there are conditions which will assure the appearance of the accused and the safety of the community," *Hazime*, 762 F.3d at 37, and "is not a pretrial determination of guilt," *United States v. Foster*, No. 20-5548, 2020 WL 6791572, at *2 (6th Cir. July 20, 2020).  There is probable cause to believe that Defendant participated in a large-scale drug trafficking conspiracy.  What is more, the evidence suggests that Defendant was a "leader" of the drug trafficking activity here in East Tennessee [*See* Doc. 116 at 29-30].

Additional evidence regarding Defendant's November 2025 traffic stop corroborates those notions and separately confirms Defendant's dangerousness.  Law enforcement stopped Defendant while he was traveling to "Knoxville from [a] short-term trip to Detroit" [*Id.* at 16].  He admittedly

6

had over 50 grams of "black tar heroin" on his person [*Id.*] And more "tan powder" and suspected

fentanyl was found in his car [*Id.* at 18]. He intended to sell the "heroin" [*Id.*].

As it relates to risk of nonappearance, after officers activated emergency lights and sirens,

Defendant drove approximately one mile before finally obeying officers and coming to a stop [*Id.*

at 17]. Even then, he tried to flee[3]—first "attempting to go over the guardrail" and then "running

toward interstate traffic" [*Id.* at 19-20]. That conduct not only posed a threat to Defendant, law

enforcement, and the community, it reflected the lengths Defendant was willing to go to evade the

law. Worse still, to avoid detention, Defendant initially agreed to stay in Tennessee and work with

law enforcement [*Id.* at 6]. But he broke that promise, returned to Detroit, and deactivated his

phone [*Id.*]. The United States proffered that some coconspirators deactivated their phones around

that time too [*Id.*].

Defendant objects to the Report's dangerousness determination based on his lack of prior

"criminal convictions" or violence in his background and the fact that the charged offenses do not

involve violence or "firearm[s]" [*See* Doc. 149 at 8]. But drug trafficking is inherently violent,

and Defendant admitted that he intended to sell the "heroin" he had on his person in November

2025 [*See* Doc. 116 at 16]. The fact that law enforcement officers released Defendant, when they

could have charged him, because he promised to cooperate does not undo the dangerousness of his

actions. This is especially true because he failed to honor his end of the bargain.

The third factor, Defendant's history and characteristics, is mixed. Defendant is a thirty-

six (36) year-old from Michigan. He has some meaningful ties to Tennessee, but most of his

---

[3] A proffer by the United States, supported by a record of Defendant's outstanding warrants, suggests that Defendant may have also been actively avoiding an outstanding warrant for failure to pay child support [*See id.* at 20].

7

family and ties are in Michigan [*See* Pretrial Services Report at 2]. Defendant has strong family support. He has no prior criminal convictions, which weighs in his favor too. *See* 18 U.S.C. § 3142(g)(3)(A), (4). But Defendant had thirteen (13) active warrants from 2012 to 2026— nine (9) specifically for failure to appear and one (1) for contempt of court, [*see* Pretrial Services Report at 4], which suggests a significant risk of nonappearance. And his pretrial services interview suggests that he was less than truthful [*See* Doc. 116 at 9]. Defendant argues that when initially released for one day, he "did not flee" or "disobey the orders of the Michigan court" [*See* Doc. 149 at 6]. But that does not negate his lengthy history of failing to appear and noncompliance with court orders [*See* Pretrial Services Report at 4]. Further, according to Defendant's own account, and confirmed by his girlfriend, he used marijuana—an act that is illegal under federal law—daily up until his arrest [*See* Pretrial Services Report at 3]. These facts, together with Defendant's vague employment history, suggest a significant risk that Defendant would not comply with the conditions of release or appear in court. *See* 18 U.S.C. § 3142(g)(3)(A).

Finally, Defendant's release would pose a serious danger to the community. *See* 18 U.S.C. § 3142(g)(4). As discussed above, Defendant's admitted intended drug distribution during the period of the charged conspiracy, indicted conduct, and other factors show the risk Defendant presents if released. And Defendant's evasive conduct, record of nonappearance, connections to Michigan, and potential sentencing exposure show he is a flight risk, which would allow him to return to the alleged drug trafficking.

On the current record, the United States has met its burden to show that "no condition or combination of conditions" of release would "reasonably assure the appearance of" Defendant "as required" and the "safety of any other person and the community." *See* 18 U.S.C. § 3142(e)(1), (f).

Defendant's lack of prior criminal convictions, community and family ties, and compliance while briefly released in this case do not change that conclusion [*See generally* Doc. 149].

**III.** **Conclusion**

Accordingly, as set forth above, the Court (1) **ACCEPTS** and **ADOPTS** the Report [Doc. 116]; (2) **GRANTS** the United States's "Emergency Motion Under 18 U.S.C. § 3145 For Revocation of Magistrate Judge's Release Order" [Doc. 47]; (3) **REVOKES** the magistrate judge's release order; and (4) **ORDERS** that Defendant Sean Evans, Jr. remain detained pending further proceedings in this case.

SO ORDERED.

KATHERINE A. CRYTZER
United States District Judge

9